UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
KEITH SIMMS,

                              Petitioner,

                                                    **MEMORANDUM & ORDER**

            - against -                              21-CV-702 (PKC)

SUPERINTENDENT LYNN LILLY,
Green Haven Correctional Facility,

                              Respondent.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Petitioner Keith Simms, appearing *pro se*, petitions this Court for a writ of *habeas corpus*

under 28 U.S.C. § 2254, challenging his conviction for engaging in a course of sexual conduct

against a child in the first degree.  For the reasons set forth below, the petition is denied in its

entirety.

## BACKGROUND[1]

### I.     Petitioner's Criminal Conduct

Between January 2, 2012 and June 23, 2013, Petitioner sexually abused his eight-year-old

step-granddaughter, S.H., on multiple occasions when S.H. stayed with Petitioner and her

grandmother, while S.H.'s mother, A.H., was at work.  (Trial Transcript ("Tr.")[2] 274–75, 671.)

On June 28, 2013, S.H. confided about the abuse to a friend, who encouraged S.H. to tell her

---

[1] Because Petitioner was convicted at trial, the Court presumes the facts set forth herein as
established and views them in the light most favorable to the prosecution.  *See Jackson v. Virginia*,
443 U.S. 307, 319 (1979) ("Once a defendant has been found guilty of the crime charged, the
factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon
judicial review all of the evidence is to be considered in the light most favorable to the
prosecution.").

[2] References to "Tr." refer to the internal pagination of the trial transcript (Dkt. 6, Ex. A),
and not to the numbering created by the Court's electronic filing system.

mother, A.H.  (Tr. 549–550.)  S.H. then told A.H. about the abuse and, in response, A.H. met with

her mother—S.H.'s grandmother and Petitioner's wife—to discuss the issue, without Petitioner

present.  (Tr. 559–60.)  Petitioner, who knew A.H. was meeting with her mother, called A.H. eight

times that night between 8:20 p.m. and 9:34 p.m.  (Tr. 560–61.)  When he could not reach his wife

(A.H.'s grandmother) by phone, Petitioner appeared at the grandmother's house, where A.H. and

other family members had convened to discuss the abuse.  (Tr. 561.)  He was arrested a week or

two later.  (Tr. 667.)

## II.     Procedural History

### A.     Petitioner's State Court Trial

The Court recites the details about Petitioner's trial in the Supreme Court of New York,

Kings County (the "Trial Court") that are relevant to the instant *habeas* petition.

During *voir dire*, the prosecution posed questions to potential jurors that implied that if

Petitioner chose to testify at trial, he would have reason to lie.  (*See, e.g.*, Tr. 144–45 ("Now, the

judge told you before, that the defendant has the right to remain silent, does not have to testify.

You can't hold that against him if he chooses not to take the stand. But if he does take the stand,

do any of you think he's going to get up there, and admit his guilt?").)  Petitioner's counsel objected

to these questions during jury selection and the Trial Court sustained the objections and each time

provided a curative instruction to the potential jurors.  (*See e.g.*, Tr. 145 ("Certainly, jurors,

Defense has no obligation or burden to do anything whatsoever, and, certainly, all witnesses,

whoever testifies, is to be considered. But, certainly, the Defense has no obligation or burden to

do anything whatsoever, nor may you speculate as to whether the defendant will or will not testify,

because it's putting a burden on him that he does not have.").)

At trial, Petitioner chose to testify.  On direct and cross-examination, he denied having

sexually assaulted or acted inappropriately with S.H.  (Tr. 668–69.)  Petitioner testified to having

2

a good relationship with A.H. (his step-daughter) prior to S.H.'s allegations against him, and that A.H. would sometimes drop S.H. off at Petitioner's apartment on Friday nights or weekends. (Tr. 649–50, 654, 669–70, 674–75.) Petitioner and his wife, S.H.'s grandmother, had a daughter approximately S.H.'s age, and Petitioner testified that the two girls would play together. (Tr. 651.) Petitioner also testified to being alone in the apartment with S.H. and his daughter on certain occasions, without any other adults present. (Tr. 671–72.)

Both S.H. and A.H. testified at trial. Petitioner's counsel cross-examined them, focusing the examination on A.H.'s former boyfriend, Katrell Smith, on the theory that Smith was the true perpetrator of the sexual abuse. (*See* Tr. 507–15 (questioning S.H.), 580–91 (questioning A.H.).) In response to cross-examination, S.H. testified that she had not been alone with Smith and was not afraid of Smith (Tr. 509–10), that Smith had never touched her inappropriately (Tr. 512), and that it was Petitioner who had abused her, not someone else (Tr. 515). A.H., in turn, indicated that it was possible that S.H. had been alone with Smith at some point while she ran "errands to the store." (Tr. 581.) A.H. testified that she had been injured by Smith in 2012 (Tr. 586); that a 2013 neglect case involving S.H. filed in New York Family Court ("Family Court") resulted in a temporary order of protection against Smith (Tr. 584); that she was warned in Family Court proceedings "that [she] should not have Katrell Smith in her home, subjecting . . . [A.H.] to domestic violence in front of her daughter" (Tr. 584–85); and that Smith had "stayed with" A.H. in her home at some point between 2011 and 2013 (Tr. 587–88).

The prosecution called an expert witness, Dr. Anne Meltzer, a child psychologist specializing in "child sexual abuse" and "forensic psychology."[3] (Tr. 609–11.) Dr. Meltzer

---

[3] Petitioner's counsel objected to Dr. Meltzer's qualification as an expert witness but was overruled. (Tr. 618.)

testified that she had not met or personally examined S.H., had not come to any conclusions about the case or written any report about the case, and would not be permitted to give an opinion about S.H.'s behavior and reactions even if she had evaluated her.  (Tr. 618.)  Her role was to explain "the common behaviors and reactions children have who have been sexually abused."  (Tr. 618–19.)  Dr. Meltzer testified that when there are recurring instances of abuse, there is "a delay in disclosure," which "is actually one of the most common features of child sexual abuse," often because the abuser is in a "position of authority over the child" and the victim "feel[s] very helpless."  (Tr. 620.)

Dr. Meltzer explained that children's disclosure of abuse is either accidental or purposeful. (Tr. 622–23.)  The prosecution then posed the following hypothetical to Dr. Meltzer: "If a nine-year-old girl had been sexually abused by a grandfather over a number of months, and she was speaking with a girl a couple of years older, and they were talking about boys at school, and she told that girl that her grandfather 'likes her,' how would you characterize that disclosure?" (Tr. 624–25.)  Dr. Meltzer answered that this would be "more accidental" than purposeful disclosure because "she's not blurting it out accidentally, but in a situation like that, she might not be telling that person to get a whole investigation to begin."  (Tr. 625.)

The prosecution then asked if there was "a particular way an abused child would be expected to behave on the witness stand."  (Tr. 625.)  Dr. Meltzer stated that children may be reluctant to testify because of feelings of "shame and embarrassment and guilt" and because they may be pressured not to tell.  (Tr. 621.)  She also answered that children react in a "wealth of ways," including appearing frightened and upset, or disassociating and seeming calm.  (Tr. 625–

4

26.)  When asked if children might "freeze" when they walk into the courtroom,[4] Dr. Meltzer replied that they might, but it would depend on the age of the child.  (Tr. 626.)

On cross-examination, Dr. Meltzer stated that her testimony described the behavior of children who had in fact been abused.  (Tr. 628.)  She agreed that because all children react differently, many things "could be characteristics of a child who has been abused."  (Tr. 628.)  Further, she acknowledged that the behaviors she described were not "diagnostic criteria," such that they were indicators of abuse, and agreed that they are "just possibilities" of how an abused child might behave.  (Tr. 628–29; 635–36 (reiterating the same).)  She also stated that there was delayed disclosure in most cases.  (Tr. 635–36.)  At the end of her testimony, Dr. Meltzer reiterated that she "could not make a conclusion in this case."  (Tr. 637.)

In summation, Petitioner's trial counsel argued that S.H. and A.H. had been "hostile" and "evasive" when answering cross-examination questions and implied that it was because they were not "telling the whole story."  (Tr. 701–02.)  Defense counsel argued that because the friend in whom S.H. had initially confided had a connection to Smith, S.H. had substituted Petitioner's name for Smith's, and then it was "too late to go back."  (Tr. 708.)  He argued that Petitioner's behavior on the night S.H. told her mother about the abuse—calling A.H. eight times and appearing in person—was the result of ordinary worry and concern, rather than an indication of guilt.  (Tr. 709.)  He then discussed Petitioner's testimony and sought to anticipate the prosecution's likely insinuation during its summation that Petitioner had lied on the stand.  Petitioner's counsel argued

---

[4] The trial transcript indicates that when the prosecution first called S.H. as a witness, the courtroom door opened but she did not enter.  (Tr. at 457–58.)  The trial judge excused the jury and allowed the prosecution to check in with S.H. before proceeding.  (*Id*. at 458.)

that if Petitioner "really wanted to lie," "it would have been easy to lie." (Tr. 144–145, 711–12.)[5] Finally, Petitioner's counsel made other statements regarding the prosecution's anticipated summation: "if the Prosecution says why would a child make that up; she has no reason to make it up, a child would not make up an allegation of sex happening to her, . . . [and] [i]f you say, okay, that's the end of the case . . . now you shifted the presumption of guilt . . . . Again, I submit to you, that's not how our system works." (Tr. 714–15.)

In its summation, the prosecution addressed the defense's alternative perpetrator theory, stating that "the question is not, was [S.H.] telling the truth; it is, why would she ever lie about something like this?" (Tr. 722.) The prosecution argued that S.H. had no motive to lie about Petitioner, and that accusing Petitioner had "torn her family apart." (Tr. 722; *see also* Tr. 723–24 ("[W]hat motive could a child possibly have to lie about this? What? Did he get her the wrong flavor of ice cream? . . . And what kind of person would she [] have to [be] to lie about this; she would have to be either evil or deranged. Did you see an insane or evil child walk into this courtroom?").) The prosecution also argued that "there were times [S.H.] didn't remember certain things" and "[i]f she were lying that wouldn't happen, she would be able to just make it up." (Tr. 725–26 ("She doesn't say the defendant threatened her or he forced her. If she was making this up wouldn't she have said that?").) In addition, the prosecution argued that if S.H. "was abused by somebody else, that person would be sitting in that chair." (Tr. 727–28.) The prosecution further argued that, unlike S.H., Petitioner "ha[d] every reason to lie." (Tr. 723.) Finally, the prosecution described Petitioner's behavior on the night the abuse came to light: "A man with a clean conscience would have minded his own business, and stayed home with his seven-year-old

---

[5] In summation, Petitioner's trial counsel did not reference the prosecution's statements during jury selection suggesting that Plaintiff would lie if he took the stand at trial.

daughter.  But the defendant was frantic; he had to get over there and try to talk his way out of this.  But the jig was up and now he's sitting in that chair."  (Tr. 728.)

The jury found Petitioner guilty of engaging in a course of sexual conduct with a minor in the first degree.  (Tr. 811–14.)  Petitioner was convicted on July 18, 2013 and sentenced on January 12, 2015 to 10 years in prison and 10 years of post-release supervision.  (Sentencing Tr., Dkt. 6, Ex. B, at 20.)

### B.      Direct Review and the Instant Petition

Petitioner appealed his conviction to the New York Appellate Division, Second Department ("Appellate Division"), raising the following claims:[6] (1) "the trial court prevented him from presenting his defense," in violation of the Sixth Amendment's Confrontation Clause, by curtailing his counsel's questions about Katrell Smith on cross-examination of A.H. and S.H.; (2) "prosecutorial misconduct during summation deprived [Petitioner] of a fair trial"; (3) the Trial Court improperly instructed the jury that "its job was to 'search for the truth' and 'see that a just result is reached;'" (4) insufficiency of the evidence; (5) the improper admission of the expert witness's testimony, which was "irrelevant and speculative"; and (6) ineffective assistance of counsel for failure to object to prosecutorial misconduct during summation (Petitioner's Appellate Brief ("App. Br."), Dkt. 6, Ex. C, at 8, 31.)

The Appellate Division affirmed Petitioner's conviction on December 18, 2019, finding that Petitioner's first four claims were unpreserved for appellate review, and that Petitioner's ineffective assistance of counsel and expert testimony claims were without merit.  *People v. Simms*, 112 N.Y.S.3d 523 (App. Div. 2019).  Petitioner's motion seeking leave to appeal to the

---

[6] Although Petitioner's appellate counsel had to be substituted twice due to conflicts of interest, Petitioner was represented by counsel on appeal.  (Pet., Dkt. 1 at ECF 46.)

New York Court of Appeals was denied on January 31, 2020. *People v. Simms*, 141 N.E.3d 484 (N.Y. 2020). Petitioner did not seek review from the United States Supreme Court. (Petition ("Pet."), Dkt. 1, at ECF[7] 2.) Petitioner filed a petition for a writ of *habeas corpus* with this Court on February 3, 2021, asserting the same six claims raised in his state court appeal. (*See id.* at 6–11, 18.)

## LEGAL STANDARD

### I.     Antiterrorism and Effective Death Penalty Act ("AEDPA")

#### A.     Statute of Limitations

Under AEDPA, signed into law on April 24, 1996, *habeas corpus* petitions filed by individuals in custody pursuant to the judgment of a state court are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1), as applicable here, provides that the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." *Id.* at § 2244(d)(1)(A). "[T]he AEDPA limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

### II.     AEDPA Standard of Review

AEDPA provides that a "district court shall entertain an application for a writ of *habeas corpus* . . . only on the ground that he is in custody in violation of the Constitution or laws or

---

[7] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

treaties of the United States." 28 U.S.C. § 2254(a).  Under AEDPA, the reviewing court may grant *habeas* relief only if the petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceedings: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A claim is "adjudicat[ed] on the merits" if the state court judgment both "(1) disposes of the claim on the merits, *and* (2) reduces its disposition to judgment."  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at an opposite result.  *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  An *incorrect* application of federal law is not necessarily *unreasonable*.  *Id.* at 410; *see also Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.").  The writ should be issued only where "there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

State court decisions that rest on independent and adequate state law grounds are generally unreviewable in federal court. *Lee v. Kemna*, 534 U.S. 362, 375 (2002); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment' . . . ." (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991))). Federal *habeas* review of a claim is precluded if the state court expressly relied on the petitioner's procedural default as an independent and adequate state law ground. *Green*, 414 F.3d at 294; *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). A procedural bar to *habeas* review may be bypassed only if the petitioner demonstrates either "cause for the default and prejudice" or that "failure to consider the claims will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748–50).

### III. *Pro Se* Litigants

Because Petitioner is proceeding *pro se*, the Court construes his petition liberally, and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and italics omitted). However, it "need not act as an advocate for" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

### DISCUSSION

### I. Petitioner's Application Is Timely

Petitioner's application is timely. The one-year statute of limitations period began running 90 days after the New York Court of Appeals denied Petitioner leave to appeal on January 31,

2020, *i.e.*, on April 30, 2020, and would have expired on April 30, 2021.[8]   Accordingly, Petitioner's application, which was filed on February 3, 2021, is timely.  (*See* Pet., Dkt. 1, at ECF 1.)

## II.   Petitioner's *Habeas* Claims Are Procedurally Barred And Without Merit

### A.   Petitioner's Confrontation Clause Claim

Petitioner argues that the Trial Court erred when it prevented his counsel, during the cross-examinations of A.H. and S.H., from asking questions regarding Smith's domestic abuse and sexual violence against A.H.  The Court construes this as a Confrontation Clause claim.  (*Id.* at ECF 5.)  This claim is both procedurally barred and without merit.

Petitioner's claim is procedurally defaulted.  While Petitioner's counsel advocated before the Trial Court to ask certain questions regarding Smith during A.H. and S.H.'s cross examinations, he did not assert Petitioner's constitutional right to do so.  The Appellate Division held that "since the defendant did not assert a constitutional right to introduce the excluded evidence at trial, his constitutional claims are unpreserved for appellate review."  *Simms*, 112 N.Y.S.3d at 524.  Although the Appellate Division did not cite to a particular state procedural rule in so holding, the Court finds that the Appellate Division likely relied on New York's "contemporaneous objection" rule, which provides, among other things, that "[f]or purposes of an appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of

---

[8] "[D]irect review" includes review by the United States Supreme Court. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).  Rule 13(1) of the Supreme Court Rules provides that litigants have 90 days after the entry of judgment to file a petition for a writ of certiorari with the Supreme Court.  Sup. Ct. R. 13(1).

effectively changing the same."  N.Y.C.P.L. § 470.05(2).  *Accord Mitchell v. Artus*, No. 07-CV-4688 (LTS) (AJP), 2008 WL 2262606, at \*25–26 (S.D.N.Y. June 2, 2008) (noting that "[s]tate courts are not required to use any particular language" when relying on state procedural rules) (citing *Coleman*, 501 U.S. at 739).  Indeed, New York appellate courts "firmly and regularly refuse to consider arguments made for the first time on appeal," *Garcia v. Franchi*, No. 19-CV-5547 (BMC), 2020 WL 353099, at \*5 (E.D.N.Y. Jan. 21, 2020); *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."), and often do so without citing to a particular procedural rule, *People v. Alicea*, 821 N.Y.S.2d 584, 585 (App. Div. 2006); *People v. Mitchell*, 782 N.Y.S.2d 45, 46–47 (App. Div. 2008); *People v. Garcia*, No. 2017-1047 S CR, 2018 WL 6627725, at \*1 (N.Y. Sup. App. Dec. 13, 2018).  Thus, the Appellate Division relied on an adequate and independent state law ground to hold that Petitioner's constitutional presentation-of-defense claim was "unpreserved for appellate review," and that the claim is procedurally barred from federal *habeas corpus* review.  *See Rivera v. Griffin*, No. 15-CV-2657 (EK), 2020 WL 5848643, at \*12 (E.D.N.Y. Sept. 30, 2020); *Simms*, 112 N.Y.S.3d at 524.

As discussed above, a procedural bar to *habeas* review may be bypassed only if the petitioner demonstrates either "cause for the default and prejudice" or that "failure to consider the claims will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748–50).  Petitioner cannot overcome the procedural bar as to this claim because he has not offered any arguments or evidence in this petition to demonstrate cause for the failure to assert the constitutional right, nor can he show that denying review of this claim would result in a fundamental miscarriage of justice.  *See Gonzalez v. Miller*, 1 F. App'x 71, 74 (2d Cir. 2001) (summary order) (denying *habeas* relief because Petitioner failed

to raise Confrontation Clause objection at trial and did not assert cause or prejudice for the default); s*ee also Totesau v. Lee*, No. 19-CV-6992 (PKC), 2022 WL 1666895, at *10 (E.D.N.Y. May 25, 2022) (denying *habeas* relief in part because petitioner failed to raise Confrontation Clause objection at trial and suffered no prejudice as a result).

In any event, even if Petitioner's Confrontation Clause claim was not procedurally barred, the claim would fail on the merits because the Trial Court's preclusion of cross-examination of A.H. and S.H about Katrell Smith was not an unreasonable application of established Supreme Court precedent.  The Sixth Amendment's Confrontation Clause provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend VI.  The extent of such confrontation, however, "rests in the sound discretion of the trial judge," *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011) (quoting *District of Columbia v. Clawans*, 300 U.S. 617, 632 (1937)), who may "impose reasonable limits on such cross-examination based on concerns about . . . confusion of the issues . . . or interrogation that is . . . only marginally relevant," *id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The trial court's exercise of discretion is given "broad deference."  *Id.* at 511.  In the present case, the Trial Court did not impose unreasonable limits on cross-examination by precluding questions about Smith's sexual abuse of A.H., on the grounds that such inquiry was overly speculative and occurred in a non-relevant time period.  (Tr. 529–30, 534.)

Petitioner's Confrontation Clause claim thus fails and *habeas* relief on this ground is denied.

**B.    Petitioner's Prosecutorial Misconduct Claim Is Procedurally Barred And Without Merit**

Petitioner next asserts that prosecutorial misconduct during summations deprived him of his right to a fair trial because the prosecution suggested that Petitioner lied on stand, thereby impermissibly shifting the burden of proof to Petitioner.  Petitioner also asserts that the prosecution made several other improper comments during summation, including asking the jury to speculate about matters not in evidence and using prosecutorial "authority to lead the jury."  (*See* Pet., Dkt. 1, at ECF 27.)

The Appellate Division held that Petitioner's prosecutorial misconduct claim was "unpreserved for appellate review, as defense counsel either did not object to the challenged remarks or made only general objections."  *Simms*, 112 N.Y.S.3d at 524–25 (citing NYCPL § 470.05(2)).  The Appellate Division's express reliance on Petitioner's procedural default under a state rule is an adequate and independent state law ground.  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (holding state court reliance on § 470.05(2) to be an adequate and independent state law ground); *Scott v. Connolly*, No. 22-CV-953 (PKC) (LB), 2014 WL 354253, at *7 (E.D.N.Y. Jan. 30, 2014) (same).  Accordingly, Petitioner's prosecutorial misconduct claim is procedurally defaulted.

The Court next considers whether Petitioner has shown either "cause for the default and prejudice attributable thereto, or . . . that failure to consider the federal claim[s] will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750 (internal quotation marks and citations omitted).  Petitioner argues that his counsel's failure to object at trial constituted ineffective assistance of counsel (Pet., Dkt. 1, at ECF 6), which can constitute "cause" sufficient to overcome the procedural bar.  *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) ("Cause may be demonstrated with 'a showing . . . [that] the procedural default is the result of ineffective

14

assistance of counsel.'" (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986))).  To constitute cause, ineffective assistance of counsel "must have been so ineffective as to violate the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  This means that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim," which must likewise have been raised in state court. *Id.*; *see also Carrier*, 477 U.S. at 489 (stating that exhaustion doctrine requires that "a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default").

Petitioner raised this ineffective assistance argument on appeal (*see* App. Br., at 31), and the Appellate Division held that "since the challenged summation remarks were not improper, defense counsel's failure to object to them did not constitute ineffective assistance of counsel." *Simms*, 112 N.Y.S.3d at 525 (citation omitted).  Because Petitioner's ineffective assistance claim was raised on appeal and resolved—albeit briefly—on the merits, *see Simms*, 112 N.Y.S.3d at 525, the Court may consider this claim on *habeas* review.

There is a circuit split as to whether a federal court reviews an ineffective assistance of counsel claim used to demonstrate a procedural default *de novo* or under AEDPA deference, and the Second Circuit has not spoken definitively on this issue.  *McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at *2 n.1 (2d Cir. Sept. 29, 2021).  The Court need not reach this issue, however, because, even if Petitioner can show cause to excuse the procedural default, the underlying prosecutorial misconduct claim does not meet the standard for *habeas* relief under either standard of review.  *See Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) (declining to adopt a standard of review for petitioner's ineffective assistance claim to show cause where the

underlying, procedurally defaulted claim did not warrant habeas relief under the AEDPA standard).

Under AEDPA, Petitioner's prosecutorial misconduct claim does not provide grounds for *habeas* relief. "[O]n federal habeas review, the relevant standard for reviewing prosecutorial misconduct claims is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (quoting *Darden v. Wainwright*, 477 U.S. 168, 180 (1986)). Claims of prosecutorial misconduct will "warrant habeas relief only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9] *Id.* (quoting *Darden*, 477 U.S. at 180). *Habeas* courts must consider the entire record when making this determination, as even "inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context." *Id.* at 146. For example, and as relevant here, a prosecutor's inappropriate and erroneous comments in summation may not undermine the fundamental fairness of a trial where those comments were invited by the defense. *See Jackson*, 763 F.3d at 145 (finding Supreme Court's decision in *United States v. Young*, 470 U.S. 1 (1985) regarding comments invited by the defense to be "clearly established" law for purposes of AEDPA).

Here, Petitioner's counsel argued that A.H.'s testimony was a fabrication, implying that the actual perpetrator was Katrell Smith, not the Petitioner. Defense counsel also argued, in anticipation of the prosecution's summation, that Petitioner's testimony was truthful and if Petitioner had wanted to lie on the stand "it would have been easy" for him to do so. (Tr. 697–712.) The prosecution responded during its summation that S.H. "had absolutely zero motive to

---

[9] The Supreme Court recognizes this rule as "clearly established" law for AEDPA purposes. *Parker v. Matthews*, 567 U.S. 37, 45 (2012).

lie" and that it was Petitioner, not someone else, who abused her.  (Tr. 722). Prosecution also argued that Petitioner "ha[d] every reason to lie." (Tr. 720–32.).  Applying the standard from *Jackson*, the Court finds that the Appellate Division's holding that, "[t]he prosecutor's remarks were responsive to the defense summation, constituted fair comment on the evidence, or were within the broad bounds of rhetorical comment permissible in closing arguments," does not constitute an unreasonable application of Supreme Court precedent.  *Simms*, 112 N.Y.S.3d at 525 (citations omitted).

First, Petitioner argues that prosecution's comments during summation implied that Petitioner had reason to lie on stand.[10]  (Pet., Dkt. 1, at ECF 25.)  This argument is without merit because, to the extent the statements were improper, they were cured by the Trial Court's

---

[10] Construed liberally, Petitioner also appears to be challenging prosecution's comments during *voir dire* implying that Petitioner would lie if he chose to testify.  (*See* Tr. 148 ("People don't lie to get into trouble; they lie to get out of trouble.")); (Tr. 145 ("In the event that the defendant does choose to testify, do any of you think he's going to get up there and say he did it?").)  Petitioner did not raise this claim on direct appeal and it is therefore procedurally defaulted.  However, the Court deems the claim exhausted because Petitioner no longer has remedies available in state court.  *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (remedies in New York State courts no longer available because "[petitioner] has already taken his one direct appeal, and [his] claim is procedurally barred from consideration in a collateral attack on his conviction), *cert denied,* 127 S.Ct. 976 (2007).  Where a claim is deemed exhausted because of a state procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 633 (2d Cir. 2001).  Because Petitioner has not made a showing to overcome the procedural bar, this claim is barred from *habeas* review.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In any event, Petitioner would not be entitled to *habeas* relief on the merits.  First, to the extent Petitioner relies on the prosecution's *voir dire* comments to raise the same arguments as with the prosecution's summation arguments, these claims fail for the same reasons discussed in the Court's analysis regarding prosecutorial misconduct above.  Second, to the extent Petitioner argues that these comments implicitly called for an improper inference regarding his Fifth Amendment right not to testify, Petitioner suffered no prejudice because the Trial Court sustained defense counsel's objections to these comments, struck them, and each time provided the jury with curative instructions.  Moreover, because Petitioner ultimately took the stand, any speculation by the prosecution regarding the implications of Petitioner exercising his right *not* to testify became immaterial.

instructions.  At the outset of the trial, the Court instructed the jury to "listen carefully to each of the witnesses, and then determine whether you will accept or reject their testimony . . . ."  (Tr. 368.)  Later, the Trial Court reminded the jury that "the remarks and summations of counsel are not evidence" and that evidence must be taken "from the mouths of the witnesses as you have heard them . . . ."  (Tr. 739; *see also* Tr. 714.)  Furthermore, the Supreme Court "has instructed federal courts reviewing habeas claims . . . premised on prosecutorial misconduct in summation to distinguish between 'ordinary trial error . . . and that sort of egregious misconduct . . . amount[ing] to a denial of constitutional due process.'"  *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48 (1974)).  Because any improper suggestion made by prosecution was cured by the Trial Court's instructions that it was up to the jury to decide matters of credibility, the remarks do not constitute the kind of "egregious misconduct" that would amount to a violation of Petitioner's constitutional due process rights.  *Id.*

Second, Petitioner claims that the prosecutor impermissibly shifted the burden of proof by asking the jury why S.H. would lie about the abuse allegations.[11]  (Pet., Dkt. 1, at ECF 26.)  But prosecutors have wide latitude during summation, particularly when responding to the defendant's own summation of the evidence.  *Perez v. Cunningham*, No. 9-CV-2233 (JG), 2009 WL 2984182, at *3 (E.D.N.Y. Sept. 17, 2009).  Here, the prosecution's comments clearly were responsive to Petitioner's counsel's summation argument that S.H. was lying about the identity of the

---

[11] (Tr. 722 ("And the question is not, was she telling the truth; it is, why would she ever lie about something like this?"); Tr. 723 ("What motive could a child possibl[y] have to lie about this? What did he get the wrong flavor of ice cream?"); Tr. 723–24 ("And what kind of person would she be have to lie about this; she would have to be either evil or deranged. Did you see an insane or evil child walk into this courtroom?"); Tr. 725–26 ("You'll notice that there were times S.H. didn't remember certain things. If she were lying that wouldn't happen, she would be able to just make it up. She doesn't say the defendant threatened her or forced her. If she was making this up wouldn't she have said that?").)

perpetrator. (*See* Tr. 710 ("I submit . . . these allegations got transferred from somebody who is threatening and dangerous, and transferred to [Petitioner].").) Even assuming the remark was improper, viewed in the light of the entire trial record, these statements fail to meet the standard for a constitutional violation of due process. As discussed, the jury was properly instructed regarding both the limited purpose of summation and the prosecution's burden of proof. (*See* Tr. 720 (Trial Court's statement about the limited purpose of summation); *see also* Tr. 716 (defense counsel's statement of the burden of proof); Tr. 721–22 (prosecution's statement of the burden of proof during summation).) Moreover, when charging the jury, the Trial Court was clear that "the accused is presumed to be innocent . . . [a]nd that presumption remains with him throughout the trial, unless his guilt is proven beyond a reasonable doubt." (Tr. 738.) The Trial Court further emphasized "that no defendant is ever required to prove his or her innocence. The law states that the People are required to prove the defendant's guilt beyond a reasonable doubt." (Tr. 738.) Thus, the prosecution's remarks did not shift the burden of proof to Petitioner or "infect" the proceedings as a whole. *See United States v. Walker*, 835 F.2d 983, 989 (2d Cir. 1987) (finding that a potentially burden-shifting comment by the prosecution did not infect the proceedings where the trial court properly instructed the jury); *Barrill v. Artus*, 511 F. Supp. 3d 394, 407 (W.D.N.Y. 2020) (same); *Young v. Eckert*, No. 19-CV-1243 (TJM), 2021 WL 4168676, *17 (N.D.N.Y. Sept. 14, 2021) (same).

Third, Petitioner's argument that the prosecution "asked the jury to speculate about matters not in evidence" is without merit.[12] (Pet., Dkt. 1, at ECF 26-27.) The prosecutor's statements did

---

[12] *See supra* n.10; (*see also* Tr. 728 ("Members of the jury, the defense in this case seems to be that S.H. was sexually abused, but it was somebody else. Think about that for a second. For that to be true, S.H. would know who really abused her, and she would be letting that person walk free.").).

not invite the jury to speculate about matters not in evidence; rather, they invited the jury to make

an inference about the absence of evidence regarding S.H.'s motive to falsely accuse Petitioner.

The statements were a fair response to the defense's theory of the case, namely, that S.H. was lying

and that Smith was the actual perpetrator.  (*See* Tr. 705–06.)  Similarly, in "ask[ing] the jury to

assume that if [S.H.] was going to lie she would have made up a better lie," the prosecutor made

the same argument that the defense had in summation regarding Petitioner: "If he wanted to lie,

why would he say that? . . . If he really wanted to lie and get up and tell you lies, it would have

been easy to lie."  (Pet., Dkt. 1, at ECF 27.)  Thus, these statements do not amount to a due process

violation warranting *habeas* relief.

Finally, Petitioner's claim that the prosecution abused its authority and led the jury to find

Petitioner guilty also fails.[13]  The prosecution's statement about Petitioner's behavior on the

evening the abuse came to light was a permissible description of the evidence.  To the extent

Petitioner argues that the prosecution's comments created an implication that Petitioner being on

trial was itself evidence of his guilt, any such implication was dispelled by the Trial Court's proper

instructions to the jury.  (Tr. 738.)  When charging the jury, the Trial Court was clear that "the

mere fact that an indictment was returned . . . creates no presumption of the defendant's guilt,"

that "the fact that the defendant was arrested is not evidence of his guilt," and that "the accused is

presumed to be innocent."  (Tr. 738.)  Accordingly, no instance of prosecutorial misconduct by

Petitioner infected the fundamental fairness of the trial as a whole, and *habeas* relief on this ground

is denied.

---

[13] (Tr. 727–28 ("If S.H. were abused by somebody else, that person would be sitting in that chair"); Tr. 727 ("A man with a clean conscience would have minded his own business and stayed home with his seven-year-old daughter. But the defendant was frantic; he had to get over there and try to talk his way out of this. But the jig was up and now he's sitting in that chair.").)

### C.     Petitioner's Ineffective Assistance of Counsel Claim Is Without Merit

Construing Petitioner's application liberally, the Court considers his ineffective assistance claim as a separate ground for *habeas* relief.  Petitioner contends that defense counsel's failure to object to all instances of alleged prosecutorial misconduct constituted ineffective assistance of counsel because "it cannot be said beyond reason that had counsel objected, the trial court would not have given the jury curative instructions," and the impact of defense counsel's failure to do so "upon the jury's decision to convict [Petitioner] cannot be eliminated."  (Dkt. 9, Ex. F, at 7.)

Because the Appellate Division rejected Petitioner's ineffective assistance claim on the merits, *Simms*, 112 N.Y.S.3d at 525, it is cognizable on *habeas* review in this Court and subject to AEDPA deference.  To obtain relief on this ground, Petitioner must show that the Appellate Division's rejection of his claim was an unreasonable application of clearly established law as set out by the Supreme Court.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for ineffective assistance of counsel claims: (1) "that [the] attorney's performance 'fell below an objective standard of reasonableness,'" *Tavarez*, 814 F.3d at 648 (quoting *Strickland*, 466 U.S. at 688); and (2) "that there was prejudice, meaning a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" *id.* (quoting *Strickland*, 466 U.S. at 694).  Under AEDPA, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly."  *Bell v. Cone*, 535 U.S. 685, 699 (2002).  "[A] petitioner must show 'that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" *McPherson*, 2021 WL 4452078, at *3 (quoting *Bell*, 535 U.S. at 699); *see also Cullen*, 563 U.S. at 190 (describing review of state-court applications of *Strickland* in the *habeas* context as "doubly deferential" and "highly deferential").  Relevant here, "decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually

21

unchallengeable absent exceptional grounds for doing so." *Broxmeyer v. United States*, 661 F. App'x. 744, 748 (2d Cir. 2016) (summary order) (declining to find that counsel's failure to object during summation constituted ineffective assistance of counsel).

The Appellate Division's determination that defense counsel's failure to object to the challenged statements was not a constitutional violation is not an unreasonable application of *Strickland*. As the Court already found, each of the challenged statements was either permissible or, alternatively, any prejudice resulting therefrom was remedied by proper instruction of the jury. Accordingly, Petitioner cannot show that the Appellate Division's rejection of his ineffective assistance of counsel claim was an unreasonable application of clearly established federal law, and *habeas* relief on this ground is denied.

### D. Petitioner's Improper Jury Instructions Claim Is Procedurally Barred And Without Merit

Petitioner argues that the Trial Court deprived him of due process when it told the jury that "a trial is a search for the truth" and that the jury had a responsibility to "see that a just result is reached." (Pet., Dkt. 1, at ECF 42; Tr. 736–37.) Petitioner asserts that the Trial Court's instructions "invited the jury to determine the guilt or innocence of Petitioner based[d] upon its interpretation of what the truth was" and upon what the jury "felt was 'just'" rather than on "what the evidence proved beyond a reasonable doubt." (Pet., Dkt. 1 at ECF 42.)

The Appellate Division held that Petitioner's jury instructions claim was "unpreserved for appellate review." *Simms*, 112 N.Y.S.3d at 524–525 (citing NYCPL § 470.05(2)). As discussed above, the Appellate Division's express reliance on Petitioner's procedural default under § 470.05(2) is an adequate and independent state law ground. *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (holding state court reliance on N.Y.C.P.L. § 470.05(2) to be an adequate and independent state law ground); *Scott v. Connolly*, No. 22-CV-953 (PKC) (LB), 2014 WL 354253,

22

at *7 (E.D.N.Y. Jan. 30, 2014) (same).  Accordingly, Petitioner's improper jury instruction claim is procedurally barred and may not be reviewed by this Court.  Petitioner has failed to overcome the procedural bar to warrant review of these claims because he has offered no arguments or evidence to show cause and prejudice to excuse his default, has not demonstrated that denying review of this claim will result in a fundamental miscarriage of justice, and did not raise a related ineffective assistance of counsel claim in state court that would be cognizable on *habeas* review.

Even if Petitioner's improper jury instruction claim has not procedurally defaulted, it would fail on its merits.  To succeed on a claim for *habeas* relief based on improper jury instructions, Petitioner must demonstrate that the Trial Court's instruction was not just "undesirable, erroneous, or even 'universally condemned,'" but that it "so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Here, any suggestion the Trial Court made to the jury that it should rely on its determination of the "truth" or the "just outcome" in reaching a verdict was cured by the Trial Court's subsequent instruction regarding the burden of proof necessary to convict Petitioner.  In particular, the Trial Court noted that "only if the evidence which you accept and believe convinces you beyond a reasonable doubt that the defendant is guilty, is the presumption of innocence discarded, and a verdict of guilty returned."  (Tr. 738.)  The Trial Court further instructed the jury that "where two inferences may be drawn from the evidence . . . the defendant is entitled to the inference of nonguilt."  (Tr. 741.)  Accordingly, the Trial Court's remarks about the truth-seeking role of the jury did not "so infect[] the entire trial" as to deprive Petitioner of due process.  *Cupp*, 414 U.S. at 147.

### E.  Petitioner's Sufficiency of the Evidence Claim Is Procedurally Barred And Without Merit

Petitioner also argues that the evidence presented at trial was insufficient to find him guilty beyond a reasonable doubt.  The Appellate Division held that Petitioner's sufficiency of evidence

claim was also "unpreserved for appellate review." *Simms*, 112 N.Y.S.3d at 524–25.   The Appellate Division relied on § 470.05(2) as an adequate and independent state law ground for Petitioner's procedural default. *Ercole*, 642 F.3d at 286 (holding state court reliance on NYCPL § 470.05(2) to be an adequate and independent state law ground); *Scott*, 2014 WL 354253, at *7 (same).   Accordingly, Petitioner's claim is procedurally barred and may not be reviewed by this Court.   Petitioner has failed to overcome the procedural bar to warrant review of these claims for the reasons discussed above.

Procedural default aside, Petitioner's claim would fail on its merits.   When reviewing the legal sufficiency of evidence in a criminal case, a *habeas* court must consider whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Contes*, 60 N.Y.2d 620, 621 (1983) (quoting *Jackson*, 443 US at 319).   A federal court may overturn a state court decision rejecting a sufficiency of evidence challenge "only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).   A *habeas* court "must presume . . . that the trier of fact resolved . . . conflicts in favor of the prosecution, and must defer to that resolution." *Id.*   Therefore, in finding that Petitioner's trial provided the jury an "opportunity to view the witnesses, hear the testimony, and observe demeanor," such that the verdict was not "against the weight of the evidence," the Appellate Division did not unreasonably apply established Supreme Court precedent and *habeas* relief for this claim is consequently denied.   (Resp., Dkt. 5, at 10.)

### F.   Petitioner's Expert Testimony Claim Is Without Merit

Petitioner argues that Dr. Meltzer's expert testimony was improperly admitted because it was non-probative and speculative.   (Dkt. 6, at 46.)   Further, Petitioner asserts that the prosecution offered Dr. Meltzer's testimony with the improper purpose of "lead[ing] the jury to believe that,

24

despite Meltzer's assertions to the contrary, she was really testifying about [S.H.] despite her lack of knowledge about [S.H.], [P]etitioner and this case." (Pet., Dkt. 1, at ECF 45.)  For these reasons, Petitioner argues that the admission of Dr. Meltzer's testimony prevented him from receiving a fair trial "unbiased by speculative testimony."  (*Id.*)

The Appellate Division rejected this claim on the merits, holding that the admission of Dr. Meltzer's testimony "was a provident exercise of discretion," that she "spoke in general terms, noting that she had never met or treated [S.H.]," and that her testimony "assisted in explaining the behavior of [S.H.] following the alleged abuse that the jury might not otherwise understand." *Simms*, 112 N.Y.S.3d at 525 (quoting *People v. Taylor*, 84 N.Y.S.3d 262, 262 (App. Div. 2018)). Having been rejected on the merits in state court, this claim is cognizable in this Court on *habeas* review and is subject to AEDPA deference.

While federal *habeas* relief does not lie for errors of state law, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991), due process requires that state criminal proceedings "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice,'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)), *overruled on other grounds by Perry v. New Hampshire*, 565 U.S. 228 (2012)). Nonetheless, "[e]ven erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived [him] of a fundamentally fair trial." *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004).

Here, there is no evidence that the admission of Dr. Meltzer's testimony deprived Petitioner of a fundamentally fair trial.  As a preliminary matter, expert testimony about the potential behavior of child victims of sexual abuse to explain delayed disclosure and testimonial behavior is permissible under New York state evidentiary law.  *See, e.g.*, *People v. Keindl*, 502 N.E.2d 577,

583 (N.Y. 1986) (finding no abuse of discretion where an expert testified to the range of psychological reactions suffered by children who were sexually abused by step-parents); *People v. Hughes*, 981 N.Y.S.2d 158, 162 (App. Div. 2014) ("It is well settled that testimony to explain the range of behaviors of sexually abused children-including why they may delay in reporting sexual abuse-may be admitted as beyond the ordinary understanding of the average juror."); *see also Miles v. Conway*, 739 F. Supp. 2d 324, 337 (W.D.N.Y. 2010) (collecting cases).  Thus, allowing Dr. Meltzer to testify on this subject matter to explain S.H.'s delayed disclosure of her sexual abuse comported with state law standards.

Furthermore, Dr. Meltzer repeatedly testified that she had never consulted with S.H., and had not reviewed or drawn any conclusions about her case.  (*See* Tr. 618, 637.)  Dr. Meltzer's testimony was not offered to prove that Petitioner abused S.H., or that S.H. had been abused at all. Dr. Meltzer clearly stated that her role was to explain "some of the common behaviors and reactions children have who have been sexually abused," (Tr. 619) and that the behaviors she described could not be used as diagnostic indicators that a particular child had, in fact, been abused (Tr. 628–29, 635–36).  Dr. Meltzer did testify that S.H.'s reactions and behavior in the courtroom, as described in the prosecution's hypothetical, were not unusual depending on the age of the child; however, she did not state or imply that S.H.'s reactions or behavior were indicators of abuse.  (Tr. 624–26.)

Dr. Meltzer's testimony at Petitioner's trial was probative and its admission was not an abuse of the Trial Court's discretion.  *See Miles*, 739 F. Supp. 2d at 337 (finding testimony of this kind to be probative and proper); *George v. Edwards*, No. 01-CV-6481(JBW), 2003 WL 22964391, at *4 (E.D.N.Y. Sept. 4, 2003) (same).  Dr. Meltzer's testimony was admitted for the limited purpose of explaining common reactions and behaviors of children who have suffered

sexual abuse, and not to make any arguments about whether, or by whom, S.H. was abused. Accordingly, the admission of Dr. Meltzer's testimony did not deprive Petitioner of a fair trial, and the Appellate Division's denial of this claim was not an unreasonable application of established federal law.  Accordingly, *habeas* relief on this ground is denied.

## CONCLUSION

For the foregoing reasons, Petitioner's request for writ of *habeas corpus* under 28 U.S.C. § 2254 is denied in its entirety.  No certificate of appealability is granted with respect to Petitioner's claims, as there is no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").  The Clerk of Court is respectfully directed to enter judgment as close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 23, 2022
         Brooklyn, New York

27